UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDY SCHLACHT,                                Case No. 18-12125

                       Plaintiff,              Avern Cohn
v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United States Magistrate Judge

                       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 13)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On July 6, 2018, plaintiff Sandy Schlacht filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Avern Cohn referred this matter to the undersigned for the purpose of reviewing

the Commissioner's unfavorable decision denying plaintiff's claim for a period of

disability and disability insurance benefits.  (Dkt. 3).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 11, 13).

### B.    Administrative Proceedings

Schlacht filed an application for a period of disability and disability

insurance benefits on November 10, 2015, alleging disability beginning on January

1

22, 2014.  (Tr. 12).[1]  The claim was initially disapproved by the Commissioner on March 11, 2016.  Plaintiff requested a hearing and on May 3, 2017, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") John Dodson, who considered the case *de novo*.  (Tr. 12-23).  In a decision dated September 26, 2017, the ALJ found that Schlacht was not disabled.  (Tr. 23).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on May 29, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

Schlacht, born December 18, 1967, was 46 years old on March 31, 2014, the date last insured.  (Tr. 22).  She has past relevant work as a child care worker and an office manager.  (*Id.*).  She claims her ability to work is limited by fibromyalgia, chronic psoriatic arthritis, irritable bowel syndrome, chronic recurrent acute sinusitis, psoriasis, benign essential hypertension, migraines, and anxiety.  (Tr.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

153).   At the hearing, she testified that after doing any of sort of activity, even for a short period of time, she would have to rest because her back and knees would bother her.  (Tr. 36-37).

The ALJ applied the five-step disability analysis and found at step one that Schlacht had not engaged in substantial gainful activity since January 22, 2014, the alleged onset date.  (Tr. 14).  At step two, the ALJ found that Schlacht's psoriasis; myalgias/fibromyalgia; irritable bowel syndrome; obesity; depression; and anxiety were "severe" within the meaning of the second sequential step.  (Tr. 15). However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 15-17).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no ropes, ladders, or scaffolds; no concentrated exposure to hazards including vibration; unskilled work involving only simple, routine, repetitive tasks; no work with the public; and no production-like standards.

(Tr. 17).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 22).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 22-23).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a

5

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

1.   Consultative Examination

Schlacht brings two arguments on the ALJ's failure to obtain a consultative examination. First, she argues that the ALJ should have obtained a consultative examination because new evidence became available after the State agency psychiatrist and medical physician reviewed her claim. She says the new evidence—14 exhibits totaling over 200 pages of medical evidence—"provides a plethora of medical documentation covering the period prior to the date last insured." The State agency physicians concluded that there was insufficient evidence to determine disability. Thus, Schlacht insists that, under 20 C.F.R. § 404.1527(c)(3), the ALJ had a duty to obtain a consultative examination. (Dkt. 11, at p. 8-10).

Schlacht's argument is untenable for two reasons.  First, the law on which she relies is outdated.  The version of the Regulation Schlacht cites states that if there is insufficient evidence to decide disability, the ALJ will try to obtain additional evidence such as a consultative examination.  However, § 404.1527(c)(3) was amended on March 25, 2012.  After that date and for all claims filed before March 27, 2017, subsection (c)(3) provides the "supportability" factor used to weigh a medical opinion.  Schlacht's argument is not about weighing opinion evidence.  Section 404.1527 does not discuss obtaining additional evidence if there is insufficient evidence to determine disability.  It is neither the Court's nor the Commissioner's duty to search for the appropriate legal authority to support plaintiff's argument.  For this reason, the argument should be deemed waived.  *Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims.").

Second, even considering the Regulation applicable to her claim, her argument fails. The Regulation in effect at the time of the ALJ's decision is 20

C.F.R § 404.1520b.[2]  This Regulation provides that if there is insufficient evidence for the ALJ to determine if a claimant is disabled, then the ALJ "may ask you [the claimant] to undergo a consultative examination."  20 C.F.R. § 404.1520b(b)(1), (3).  Importantly, "[t]he ALJ has discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010).  Schlacht does not acknowledge the discretion afforded an ALJ's decision to obtain additional evidence, and does not argue that the evidence before the ALJ, i.e. all the record evidence, was insufficient for the ALJ to make a determination.  Instead, her argument seems to be that since the evidence was insufficient at the initial level when the reviewing physicians reviewed her claim, the ALJ had a duty to obtain a consultative examination.  But the Regulation does not support this contention.  The Regulation explains how the Administration considers evidence *after* the initial evaluation, i.e. how the ALJ will consider the evidence.  She cites no authority for the proposition that where a State agency physician has insufficient evidence to determine disability *at the initial level*, the ALJ is then obligated to obtain a consultative examination to determine disability, even after additional medical evidence is entered into the record.

---

[2] The Commissioner says that plaintiff's argument is based on an outdated version of 20 C.F.R. § 404.1512(f).  However, the Regulation cited above, § 404.1520b contains the language Schlacht cites that was applicable at the time of the ALJ's decision.

In any event, it appears that there was sufficient evidence on which to make a disability determination. Schlacht alleges she was disabled due to fibromyalgia, chronic psoriatic arthritis, irritable bowel syndrome, chronic recurrent acute sinusitis, psoriasis, benign essential hypertension, migraines, and anxiety. (Tr. 153). The ALJ did not find that there was insufficient evidence on which to determine plaintiff's RFC. The ALJ reviewed the record evidence pertaining to plaintiff's conditions, including records from before the alleged onset date and from after the date last insured. Specifically, the ALJ discussed Schlacht's treatment with her primary care physician, treatment with two rheumatologists, her subjective statements, her conservative treatment with medication, and the medical opinion evidence. (Tr. 17-22). It is unclear from Schlacht's argument how the record contained insufficient evidence to determine disability considering the record contains all of her medical records from before, during, and after the relevant period. Indeed, it is the claimant's burden to establish that he or she is disabled; it is not the ALJ's burden to prove that the claimant is not disabled. *See* 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The record contains over 500 pages of medical evidence, including evidence on fibromyalgia (Tr. 273, 277, 329, 332-33),

psoriatic arthritis (Tr. 277, 313),[3] irritable bowel syndrome (Tr.  297, 313), chronic

sinusitis (Tr. 297, 302, 329-30), hypertension (Tr. 290, 307, 324),

migraine/headache (Tr. 297,315, 319), and anxiety (Tr. 290, 313, 357), among

other records.  In light of the amount and substance of medical evidence on her

alleged impairments, it would appear that there was sufficient evidence on which

to determine disability.  Thus, the ALJ did not abuse his discretion by failing to

obtain a consultative examination.

Next, citing 20 CFR § 404.1503(e) and § 416.903(e), Schlacht argues that

the ALJ had a duty to ensure that a psychologist or psychiatrist review the file

because she had a documented mental impairment.  The language she cites states,

in part, "An initial determination by a State agency or the Social Security

Administration that you are not disabled (or a Social Security Administration

review of a State agency's initial determination), in any case where there is

evidence which indicates the existence of a mental impairment, will be made only

after every reasonable effort has been made to ensure that a qualified psychiatrist

or psychologist has completed the medical portion of the case review and any

applicable residual functional capacity assessment."  (Dkt. 11, at p. 11).  She also

argues that the ALJ had a duty to order a psychological examination under 20

---

[3] On May 14, 2015, Dr. Torregrosa, Schlacht's rheumatologist, found no evidence to
support the diagnosis of active psoriatic arthritis.  (Tr. 277).

C.F.R. § 404.1529(b).  (Dkt. 11, at p. 12-13).  She insists that, "Once the ALJ found that Plaintiff's physical medical conditions could not be causing the severe pain she was complaining of . . . he had a duty to obtain a psychological examination pursuant to 20 C.F.R. §404.1529 (b)."  (*Id.*).

All of the Regulations Schlacht cites are inapposite.  20 C.F.R. § 416.903(e) is inapplicable here as it concerns "determinations for childhood impairments." This is not a childhood disability case.  As for § 404.1503(e), Schlacht again cites outdated law.  The language she cites in subsection (e) became ineffective on March 27, 2017.  It appears that the Administration removed subsection (e) entirely.  *See* 82 F.R. 5844-01, 2017 WL 168819, at *5864, (Jan. 18, 2017). Schlacht cites § 404.1529 for the proposition that the ALJ had a duty to obtain a psychological examination.  However, on the date of the ALJ's decision, § 404.1529 addressed how the Administration will evaluate subjective symptoms, including pain.  This regulation says nothing of a duty to obtain a psychological examination if the claimant has a mental impairment.  Again, it is not for the Court to conduct legal research on plaintiff's behalf to craft an argument supported by law.  That is the plaintiff's obligation.  Accordingly, these arguments should be deemed waived.  *See Marko*, *supra*.

The undersigned acknowledges, however, that § 1503(e) is an extension of 42 U.S.C. § 421(h), which was applicable on the date of the ALJ's decision.  But

Schlacht misinterprets the Regulation.  This Court has analyzed the applicability of

§ 421(h) to the ALJ's decision.  *Moon v. Comm'r of Soc. Sec.*, 2018 WL 1406840,

at *3 (E.D. Mich. Mar. 21, 2018).  That Regulation says, "*An initial determination*

*under subsection (a), (c), (g), or (i)* shall not be made until the Commissioner of

Social Security has made every reasonable effort to ensure—in any case where

there is evidence which indicates the existence of a mental impairment, that a

qualified psychiatrist or psychologist has completed the medical portion of the case

review and any applicable residual functional capacity assessment."  42 U.S.C. §

421(h) (emphasis added).  After reviewing subsections (a), (c), (g), and (i), the

court concluded that, "[a]s the ALJ's review in this case was not "[a]n initial

determination under subsection (a), (c), (g), or (i)," § 421(h) did not apply to the

proceedings before the ALJ."  *Moon*, 2018 WL 1406840, at *3.  It follows that the

ALJ does not violate that statutory provision if no psychiatrist or psychologist

evaluates a claimant's mental health.

　　To the extent § 404.1503(e) has any bearing on plaintiff's claim, the

Regulation does not apply to the ALJ's decision for the same reason.   The version

Schlacht cites states,

> (e) *Initial determinations* for mental impairments. *An*
> *initial determination by a State agency or the Social*
> *Security Administration that you are not disabled (or a*
> *Social Security Administration review of a State agency's*
> *initial determination)*, in any case where there is
> evidence which indicates the existence of a mental

> impairment, will be made only after every reasonable
> effort has been made to ensure that a qualified
> psychiatrist or psychologist has completed the medical
> portion of the case review and any applicable residual
> functional capacity assessment.

§ 1503(e) (emphasis added).  By the terms of the Regulation, § 404.1503(e) only

applies at the initial-determination level and thus does not apply to ALJ review.

*Moon*, 2018 WL 1406840, at \*3-4.  The ALJ's decision was not an initial

determination.

Moreover, a "qualified psychiatrist" did in fact review Schlacht's case with

regard to her mental impairments *at the initial level*.  On March 10, 2016,

psychiatrist Dr. Kaul reviewed the available medical evidence on plaintiff's mental

impairment, but determined there was insufficient evidence to assess the presence

of a disorder.  (Tr. 67-68).  Therefore, Schlacht's argument is both legally and

factually incorrect.

Finally, to the extent she again argues that the ALJ had a duty to obtain a

consultative examination, specifically a psychological examination, the argument

fails for the reasons discussed above: the ALJ did not abuse his discretion to

decline to order a consultative examination because the ALJ had enough evidence

to make a disability determination (and Schlacht does not specifically argue

otherwise).

2.     SSR 83-20

Schlacht argues that once additional medical evidence was added to the record, the ALJ had an obligation to obtain a consultative examiner's opinion as to the date of onset of her medical conditions under SSR 83-20.  (Dkt. 11, at p. 10-11).  Schlacht's argument that the ALJ did not follow SSR 83-20 lacks merit.  As the Commissioner pointed out, Social Security Ruling 83-20 applies where the ALJ determines that the claimant is disabled and the question arises as to when the disability arose.  *See* SSR 83-20, 1983 WL 31249.  The Sixth Circuit has acknowledged that "this policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).  Where there is no finding that the claimant is disabled, "no inquiry into onset date is required."  *Id.*  Here, the ALJ did not find plaintiff disabled prior to the date last insured and thus Social Security Ruling 83-20 has no bearing on her case.  *See also Monville v. Comm'r of Soc. Sec.*, 2017 WL 4081854, at *3 (E.D. Mich. Sept. 15, 2017).

3.     RFC

Schlacht raises two arguments regarding the RFC.  First, she argues that the ALJ did not properly assess her mental RFC.  (Dkt. 11, at p. 13).  Specifically, she says the ALJ did not provide a function-by-function analysis on her work-related restrictions caused by her mental impairments.  Schlacht avers that, "Nowhere in

the ALJ's decision does he specifically outline Plaintiff's ability to understand,

carry out and remember instructions; use judgment in making workrelated

decisions, respond appropriately to supervision, co-workers in work situations; and

deal with changes in a routine work setting as well as the medical documentation

he relied upon in coming to these conclusions."

The Commissioner is correct that the ALJ was not required to provide a

function-by-function analysis of Schlacht's mental impairments.  The Court's

observation in *Sanders v. Comm'r of Soc. Sec.*, 2018 WL 2181096, at *5 (E.D.

Mich. Jan. 23, 2018) is apt here:

> [C]ontrary to Plaintiff's argument, while SSR 96-
> 8p implicitly requires an ALJ to consider all work-related
> limitations and functions in determining a claimant's non-
> exertional capacity, it does not require an ALJ to
> explicitly address Plaintiff's limitations with regard to
> every work-related function—especially if Plaintiff is not
> limited with regard to a particular function.  *See* SSR 96-
> 8p.  In fact, in response to similar arguments advanced by
> Plaintiff's counsel in other cases, the Court has repeatedly
> held that an ALJ need not address every possible work-
> related function.  *See*, *e.g.*, *Gilbert v. Comm'r of Soc.
> Sec.*, No. 15-CV-11325, 2016 WL 8114195, at *5 (E.D.
> Mich. Apr. 29, 2016); *Sumner v. Comm'r of Soc. Sec.*,
> No. 13-14303, 2014 WL 6809891 (E.D. Mich. Dec. 2,
> 2014).  In so holding, the Court relied on Sixth Circuit
> precedent for the premise that "[a]lthough a function-by-
> function analysis is desirable, SSR 96-8p does not require
> ALJs to produce such a detailed statement in writing."
> *Delgado v. Comm'r of Soc Sec.*, 30 Fed.Appx. 542, 547-
> 48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of*

*Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir.
Dec. 19, 2000)).

Here, the ALJ did in fact address her limitations with regard those functional
domains.  At step three, the ALJ discussed her functional capacity in relation to
Listing 12.04.  The ALJ discussed her ability to understand, remember, or apply
information; her ability to interact with others; her ability to concentrate, persist, or
maintain pace; and her ability to adapt or manage herself.  (Tr. 16-17).  Then, in
the RFC discussion, the ALJ again addressed her mental impairments, although not
in as great of detail.  For example, the ALJ said that the RFC limitations of simple,
routine, repetitive tasks with no work with the public and no production-like
standards were to account for her "combined mental impairments, which caused
moderate limitations in her abilities to interact with others and maintain
concentration, persistence, or pace as discussed above."  (Tr. 20).  Thus, the ALJ
unambiguously and expressly discussed Schlacht's functional abilities with regard
to her mental impairments.  Accordingly, the undersigned suggests that the case
should not be remanded on this basis.

Schlacht also argues that the ALJ did not provide a narrative discussion
describing how the evidence supports each conclusion, citing specific medical facts
and nonmedical evidence in violation of SSR 96-8p.  (Dkt. 11, at p. 18).  However,
SSR 96-8p simply directs an ALJ to assess an RFC in the context of what a

claimant can do on a "regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *1-2.  *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547-48 (6th Cir. 2002) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.").  An "ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 Fed. Appx. at 548.  Here, no particular inconsistencies are alleged; and the ALJ discussed all the relevant evidence, cited supporting facts and evidence, and concluded that the evidence does not preclude Schlacht from performing a limited range of light work.

Specifically, in determining Schlacht's RFC, the ALJ began by discussing her complaints and treatment with medical professionals.  For instance, the ALJ discussed Schlacht's complaints to her primary care physician that she had missed four or five days of work due to achiness and morning stiffness.  (Tr. 18, 291). The ALJ continued to outline her treatment with her primary care physician, noting her complaints and normal physical examinations.  Next, the ALJ discussed Schlacht's treatment with two rheumatologists, first Dr. Shah, then Dr. Torregrosa. She had mild paraspinal spasms and some "trace puffiness" in her hands on examination with Dr. Shah in June 2014.  (Tr. 627).  Dr. Shah concluded at this

visit that Schlacht had polyarthralgias suggestive of fibromyalgia.  He

recommended walking exercises 30 minutes twice a day at a minimum.  (Tr. 18,

627).  She began treating with Dr. Torregrosa in May 2015, over a year after the

date last insured.  The ALJ discussed the treatment records from Dr. Torregrosa

including the largely normal physical examinations.  (Tr. 19, 276-77).  The ALJ

then discussed how the medical and nonmedical evidence support each of the

ALJ's conclusions.  Specifically, the ALJ stated the following:

> [C]onsidering all of the evidence, it is determined that
> through the date last insured, the claimant had the
> residual functional capacity to perform light work as
> defined in 20 CFR 404. l 567(b) except no ropes, ladders,
> or scaffolds; no concentrated exposure to hazards;
> unskilled work involving only simple, routine, repetitive
> tasks; no work with the public; and no production-like
> standards. The restriction to light work with no climbing
> of ropes, ladders, or scaffolds and no concentrated
> exposure to hazards (including vibrations) accounts for
> the claimant's myalgias and the effects, if any, of her
> obese body habitus. Those restrictions also account for
> the claimant's psoriasis, which, as discussed above, was
> well controlled with Humira. She also required only
> simple, routine, repetitive tasks with no work with the
> public and no production-like standards. These
> limitations account for the claimant's combined mental
> impairments, which caused moderate limitations in her
> abilities to interact with others and maintain
> concentration, persistence, or pace as discussed above.
> These restrictions also accommodate the claimant's
> history of irritable bowel syndrome/fecal incontinence by
> limiting workplace stressors, which may exacerbate these
> conditions considering the claimant's reports that the [sic]
> her symptoms tended to occur during stress (5F/28). No
> greater or additional restrictions were required through

the date last insured considering the minimal objective
findings on laboratory testing and clinical examinations
and the conservative treatment history, which are
discussed at length above.

(Tr. 20). The ALJ expressly discussed how the evidence supports each of the RFC

decisions. Accordingly, the undersigned concludes that the decision should not be

remanded for the ALJ to provide further narrative discussion.

Lastly, Schlacht insists that the case should be remanded so the ALJ can

obtain a medical opinion that supports the RFC. The ALJ discounted the opinion

evidence, and the State agency reviewing physicians did not issue opinions

because they concluded the evidence was insufficient to determine disability.

Thus, says Schlacht, the ALJ was left with no medical opinion in the record to

support the RFC. She accuses the ALJ of playing doctor, making his own medical

opinions about the medical evidence. (Dkt. 11, at p. 19-20).

The law is clear that in arriving at plaintiff's RFC, the Commissioner must

base the decision on "all of the relevant medical and other evidence." 20 C.F.R.

416.945. The statute does not require that the Commissioner rely on a physician's

RFC finding or any other particular piece of evidence. Indeed, the Sixth Circuit

has opined or endorsed the conclusion, in several unpublished decisions that

requiring "…the ALJ to base her RFC finding on a physician's opinion, would, in

effect confer upon the treating source the authority to make the determination or

decision about whether an individual is under a disability, and thus would be an

abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013); *see also Stokes v. Comm'r of Soc. Sec,* 769 Fed. App'x 298 (6th Cir. 2019); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 Fed. App'x 395, 401 (6th Cir. 2018); *Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 442-43 (6th Cir. 2017); *Brown v. Comm'r of Soc. Sec.*, 602 Fed. App'x 328, 331 (6th Cir. 2015); *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 439 (6th Cir. 2010).

It is true that courts have admonished ALJs, as non-physicians, to exercise caution in evaluating raw medical data to extrapolate what a claimant can and cannot do. *See Brown v. Comm'r of Soc. Sec.,* 602 Fed. Appx. 328, 331 (6th Cir. 2015) ("[A]n ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records."); *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074, at *16 (E.D. Mich. Aug. 19, 2013) ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings.") (internal quotation marks and citation omitted)). But, there is no "brightline rule that medical opinions must be the building blocks of the RFC." *Charbonneau v. Comm'r of Soc. Sec.*, 2019 WL 960192, at *17 (E.D. Mich. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019); *Williams v. Berryhill*, 2019 WL 1274821, at *3 (E.D. Mich. Mar. 20, 2019). Indeed, it has been recognized that "there are likely instances in

which an ALJ can formulate an RFC without the aid of opinion evidence." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D. Mich. 2017).  In light of the Sixth Circuit's recent and repeated recognition of this fact, the ALJ's review of the medical record cannot be faulted.

Schlacht is correct that the ALJ discounted the opinion evidence and that the State agency physicians did not issue RFC opinions.  However, the ALJ did not totally discount *all* the opinion evidence.  Schlacht's treating physician Dr. Barad completed several work excusal notes.  On November 5, 2013, Dr. Barad indicated that Schlacht would miss three days of work but could return to work on November 8th with no restrictions.  (Tr. 261).  On January 15, 2014, Dr. Barad said she would miss seven days of work but could return to work on January 20, 2014 with no restrictions.  (Tr. 263).  Finally, on May 1, 2014, Dr. Barad said she would miss one week of work but could return on May 8th with no restrictions. (Tr. 266).  The ALJ gave these work excusal notes some weight because Dr. Barad did not indicate the diagnosis or reason for the short-term absence, but the fact that she indicated that Schlacht could return to work each time without restriction suggests that Schlacht's impairments were not so severe that she was incapable of even light work.  (Tr. 20-21).  The ALJ gave little weight to Dr. Torregorsa's August 31, 2015 opinion.  Dr. Torregrosa indicated that Schlacht's fibromyalgia kept her from standing/walking up to two hours in an eight-hour workday, sitting

24

six or more hours in a workday, and lifting/carrying up to 10 pounds occasionally without an unusual number and length of rest periods.  (Tr. 258).  The ALJ also gave little weight to short-term restriction opinions from 2012 and 2013 because they pre-date the alleged onset date by nearly a year and the restrictions were each for short periods; they do not reflect long-term or ongoing restrictions.  (Tr. 21).  Thus, the ALJ was not without *any* opinion evidence (and Schlacht does not contest any of the weight determinations).  Dr. Barad's work excusal notes and the other opinion evidence, though discounted, were at least "a buoy that kept the ALJ from being totally lost at sea" in formulating the RFC.  *See Williams*, 2019 WL 1274821, at *4.

Beyond the opinion evidence, the ALJ reviewed the objective medical evidence and subjective evidence in formulating the RFC, as is his role in adjudicating a claim for disability.  The medical evidence[4] was not so complex that a lay person could not review the evidence and formulate functional limitations therefrom.  The objective findings included normal gait, musculoskeletal strength and sensation, and normal range of motion, (Tr. 305, 315, 326, 627, 662,666,670) and normal psychiatric examination (Tr. 326, 506, 666, 670).[5]  Schlacht's

---

[4] Again, the relevant period under review is between January 22, 2014 and March 31, 2014, almost a two-month time span.

[5] These citations are to records dating from a few months before the alleged onset date to a few months after the date last insured.  Records from 2015 through 2017 are too remote to have much relevance to Schlacht's functional capacity from January to March 2014.  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the

physicians at times provided assessments of her complaints and the objective

findings that point to functional limitations or abilities.  For example, in June 2014,

after reviewing Schlacht's bloodwork, Dr. Shah, Schlacht's rheumatologist,

recommended that she do "walking exercises 30 minutes twice a day minimum."

(Tr. 627).  He also recommended she take pain medication, change her diet, and

stay active.  Though Dr. Shah made these recommendations a few months after the

relevant period, there is no reason to suggest, based on the medical evidence from

the relevant period, that Schlacht could not walk and stay active during the relevant

period as well.  The ALJ characterized Schlacht's treatment with pain medication

and Humira injections as "conservative."  And, the ALJ discussed Schlacht's

subjective complaints from the relevant period, some of which do not indicate that

she was more limited than stated in the RFC.  For instance, on March 25, 2014,

Schlacht reported irritable bowel syndrome symptoms "months ago."  (Tr. 313).

She reported her fecal incontinence occurred when she was anxious and acutely

stressed.  The ALJ accounted for her anxiety-induced incontinence by limiting her

to low-stress work activity.  (Tr. 21).   Schlacht also reported shoulder aches, but

---

alleged onset of disability are of limited relevance."); *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").  However, even some records from beyond the relevant period reveal largely normal physical examination.  (*See* Tr. 273, 274, 276).

said they were "easing up slightly."  And, she reported that the Humira injections helped her myalgias.  (Tr. 313).

The ALJ did not "play doctor" in assessing the medical and nonmedical evidence and determining that, based on the evidence, Schlacht could perform a reduced range of light work.  The objective evidence is not complex and her treatment with pain medication and Humira injections was not so sophisticated that the ALJ was without any indication of what Schlacht's functional capacity was during the relevant period.  Her treating rheumatologist believed she could walk 30 minutes twice a day, *at a minimum*, Schlacht reported improvement with treatment, and her objective physical examinations were largely normal.  This evidence does not require expert medical interpretation to determine that Schlacht could engage in a range of work activities from January through March 2014.  Accordingly, the undersigned finds no error in the ALJ's review of the evidence and assessment of the RFC, even though there is no medical opinion in the record which directly supports the RFC.

### 4.    Step Two

Schlacht argues that the ALJ failed to follow the "slight abnormality" standard at step two when he found that her migraines were a non-severe impairment.  (Dkt. 11, at p. 14).  Without citation to any objective medical evidence in the record, Schlacht asserts that the medical records document that she

suffers from migraine headaches and sought treatment for the headaches.  She also says she complained of experiencing migraines once or twice a month, lasting for about two hours each.  She says that, despite this evidence, the ALJ did not address her headaches anywhere in the decision.  (*Id.* at p. 15).  The Commissioner acknowledges that the ALJ did not discuss Schlacht's migraines other than to point out that she included the impairment in her disability report.  (Dkt. 13, at p. 25).  However, the Commissioner asserts that her migraines were not a "medically determinable impairment" and were not severe.  According to the Commissioner, plaintiff's records from September 2013 through May 2014 do not document a diagnosis of migraines, complaints of migraines, nor treatment for migraines.  (Tr. 290-328).

In the view of the undersigned, there is no error requiring remand at step two.  At step two, the ALJ found some of Schlacht's impairments to be severe.  He then found her medically determinable impairments of hypertension, plantar fasciitis, and sleep apnea to be nonsevere.  (Tr. 15).  Schlacht is correct that the ALJ did not discuss her migraines at step two.  The ALJ's only reference to migraines in the decision was to say that migraines were included in Schlacht's function report and that Schlacht reported diarrhea and headache (not migraines) to her physician, but Schlacht noted that they were not major symptoms.  (Tr. 17, 18).  It appears, then, that the ALJ considered her migraines to be a non-medically

determinable impairment.  The undersigned agrees with the Commissioner that this

determination was not erroneous.

Under the regulations, the ALJ must consider whether a claimant's

impairment is a medically determinable impairment at Step Two.  *See* 20 C.F.R.

§ 404.1520.  A medically determinable impairment is "an impairment that results

from anatomical, physiological, or psychological abnormalities, which can be

shown by medically acceptable clinical and laboratory diagnostic techniques."

*Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10,

2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL

1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508,

404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental

impairment must be established by objective medical evidence from an acceptable

medical source.  We will not use your statement of symptoms, a diagnosis, or a

medical opinion to establish the existence of an impairment(s)."  20 C.F.R.

§ 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4

(E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL

4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996

WL 374187 at *1) ("A diagnosis establishes medically determinable impairment

only where it is supported by objective medical evidence.").

In this case, medical records from September 12, 2013 through May 1, 2014 (covering the relevant period and slightly beyond) do not indicate that Schlacht's migraines were established by objective medical evidence, or established by anything other than Schlacht's own statements. (Tr. 290-328). During her treatment, she complained of a headache on October 24, 2013. She reported that her headache (and diarrhea) was not a major symptom, but she was not feeling well. (Tr. 297). Her headaches were not further discussed in that medical record, nor does it appear that her headache was the result of an anatomical, physiological, or psychological abnormality such that headaches could be considered a medically determinable impairment under the regulations. Indeed, on March 25, 2014, she denied headaches to her treating physician. (Tr. 315). Moreover, her complaints of headaches in the relevant period say nothing of *migraine* headaches. There is no diagnosis of migraine headaches or discussion of migraine headaches in the records from the relevant period and beyond. And, Schlacht points to no medical evidence in the record on her migraines that would support her contention that migraines headaches were a medically determinable impairment. She cites only her disability report and transcript testimony in which she stated that migraines affected her ability to work. (Dkt. 11, at p. 14-15). But, the ALJ "will not use your statement of symptoms . . . to establish the existence of an impairment." 20 C.F.R. § 404.1521. Schlacht's migraines were not established by objective

medical evidence from an acceptable medical source, and thus were not medically determinable.   *See* 20 C.F.R. § 404.1521.

Even if the ALJ were to have determined that plaintiff's migraines were medically determinable but nonsevere impairments, remand for further analysis would be futile.  In order to be classified as severe at step two, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In *Higgs v. Bowen*, the Sixth Circuit found that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  880 F.2d 860, 862 (6th Cir. 1988).  As observed in *Sponsler v. Comm'r of Soc. Sec.*, 2018 WL 1173019, *8 (N.D. Ohio Mar. 6, 2018), since *Higgs*, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment if the medical evidence does not contain information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition.  *See e.g.*, *Long v. Apfel*, 1 Fed. Appx. 326, 332 (6th Cir. 2001).  Sixth Circuit precedent also establishes that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the

ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted).

Significantly, there is no medical opinion in the record assessing any functional limitations caused by migraine headaches, which also renders any step two error harmless. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec.*, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *Caldwell v. Berryhill*, 2017 WL 975371, at *5 (M.D. Tenn. Mar. 14, 2017) ("Indeed, the

mere presence of neck pain—even if it is supported by objective testing—does not, without more, establish that Caldwell was limited by it.").  Where an impairment is not associated with any functional limitations in the record, failure to discuss the impairment after Step Two of the sequential analysis is harmless.  For instance, in *Smith v. Comm'r of Soc. Sec*, the ALJ determined that the plaintiff's brain lesions were nonsevere based on a finding that the lesions had not changed since 2008, and there was no evidence that the plaintiff was limited by any neurological disorder. *Smith,* 2016 WL 423757, at \*6 (E.D. Mich. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 409316 (E.D. Mich. Feb. 3, 2016).  The ALJ did not discuss the plaintiff's brain lesions at any point in the decision after Step Two.  *Id.*  Nevertheless, the court held that the ALJ's error was harmless because the plaintiff's neurologist did not diagnose a neurological disease or assess functional limitations as a result of the brain lesions.  *Id.*

In this case, Schlacht's physicians did not note any functional limitations related to migraines or headaches in general.  And, there are no objective findings related to migraines, nor even a diagnosis of migraines in the record.  *See also Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) (citations omitted) (Nonetheless, not all impairments are severe: "The mere existence of ... impairments ... does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").  Accordingly,

the undersigned concludes that the medical records do not establish functional limitations based on migraines.  As such, any error at Step Two is harmless and remand would be futile.

     5.    Subjective Statements

Schlacht claims that the ALJ erred in consideration of her subjective complaints.  Specifically, she contends that the ALJ did not consider how her persistent attempts to obtain pain relief enhanced her credibility, as set forth in SSR 96-7p.  (Dkt. 11, at p. 15).  Though the ALJ discussed the fact that Schlacht initially sought treatment for her pain with her primary care physician and was then referred to rheumatologist Dr. Shah, Schlacht states that she did not experience any decrease in her symptoms during her treatment with Dr. Shah.  She also says she continued to experience symptoms, including body aches and pains, throughout her treatment with Dr. Torregrosa.  Still, the ALJ concluded that the minimal objective findings weighed against a finding of disabling impairments.  (*Id.* at p. 16).

In response, the Commissioner argues that the ALJ did not ignore Schlacht's complaints of pain and acknowledged that she treated with her primary care physician and was referred to a rheumatologist.  (Dkt. 13, at p. 23-24).  However, as the ALJ noted, there were minimal objective findings and Schlacht's treatment was conservative.  Accordingly, the ALJ concluded that her impairments were not disabling.

In the view of the undersigned, the Commissioner is correct that there was no error in the ALJ's assessment of Schlacht's subjective complaints, as discussed more fully below, and that Schlacht again relies on outdated law. SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016), which took effect on March 16, 2016, governs the ALJ's consideration of Schlacht's subjective complaints. SSR 96-7p did not apply at the time of the ALJ's decision.

"A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c). In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record. *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the term credibility ... to clarify that subjective symptom evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1. "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment." *Coffey v. Comm'r of Soc.*

*Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's

subjective symptoms, the regulations require an ALJ to consider several factors,

including: (1) daily activities; (2) location, duration, frequency, and intensity of

pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication taken; (5) treatment, other

than medication, to relieve pain or other symptoms; (6) any measures used to

relieve pain or other symptoms; and (7) other factors concerning functional

limitations and restrictions due to pain or other symptoms.  20 C.F.R. §

404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of

the evidence to evaluate the intensity, persistence, and limiting effects of an

individual's symptoms, we will also use the factors set forth in 20 CFR

404.1529(c)(3).").

The undersigned has reviewed the ALJ's decision and finds that the ALJ did

not err in his consideration of Schlacht's efforts to obtain pain relief.  SSR 16-3p

provides that "[p]ersistent attempts to obtain relief of symptoms, such as increasing

dosages and changing medications, trying a variety of treatments, referrals to

specialists, or changing treatment sources may be an indication that an individual's

symptoms are a source of distress and may show that they are intense and

persistent."  The ALJ thoroughly discussed Schlacht's statements, the objective

medical evidence, and her attempts to relieve her symptoms.  Still, the ALJ found

that her statements regarding her symptoms were not entirely consistent with the

medical evidence.  (Tr. 19).  After discussing the medical evidence, the ALJ

concluded that,

> Although the medical records as discussed above support some findings in the claimant's workrelated abilities through the date last insured, the evidence as a whole does not support a finding that her impairments precluded her from performing all work activity. First, the objective evidence is not fully consistent with a finding of disability. . . .  Overall, the minimal objective findings weigh against a finding of disabling impairments through the date last insured. Secondly, the treatment history through the date last insured is also not fully consistent with a finding of disability. The claimant's treatment was primarily conservative and limited to taking medications (including Humira injections) as prescribed by her primary care providers (5F). Other than treating with a podiatrist for her non-severe plantar fasciitis, there is no evidence of any ongoing treatment with a specialist. Despite her allegations of mental health impairments, there are no progress notes of care with a psychiatrist, psychologist, or therapist through the date last insured. Similarly, the undersigned notes that she did not consult with any rheumatologist until after her date last insured (11F/124; 3F). In sum, the claimant's treatment through the date last insured was fairly routine and conservative, which suggests that her impairn1ents were not as severe and debilitating as she claims.

(Tr. 19).

The ALJ did address Schlacht's efforts to obtain pain relief, and concluded

that she was treated with conservative modalities which detracted from her

complaints of disability.  Conservative treatment alone does not indicate that

Schlacht was disabled.  *See Hauser v. Comm'r of Soc. Sec.*, 2014 WL 48554 at *9 (S.D. Ohio Jan. 7, 2014), *report and recommendation adopted*, 2014 WL 221946 (S.D. Ohio Jan. 21, 2014) ("In terms of medical care, it is proper to classify taking prescription medications and receiving injections as "conservative" treatment."); *Carter v. Comm'r of Soc. Sec.*, 2014 WL 3400710, at *5 (E.D. Mich. July 10, 2014) (finding that the plaintiff's "conservative treatment of his pain with prescription medication and one spinal steroid injection" was inconsistent with his allegations of disabling pain).  Consequently, her attempt to obtain pain relief does not bolster her claim that she is disabled.

Even if the ALJ's discussion of Schlacht's attempts at pain relief could be characterized as erroneous, the error would be harmless.  The Sixth Circuit has "recently held that even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."  *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)).  Thus, even if Schlacht's attempts to alleviate her symptoms bolstered her statements, the remaining evidence still supports the ALJ's conclusion here.  As discussed above, objective findings from the relevant period included normal physical examinations and her treating physicians' statements do not suggest that

she is more limited than stated in the RFC.  Schlacht did not treat with a specialist until May 2014, two months after the date last insured.  Her primary care records from the relevant period note complaints of diarrhea, sinusitis, hypertension, and psoriasis, but do not indicate any functional limitations; rather, they show largely normal physical examination.  (*See, e.g.*, Tr. 297, 302, 307, 313).

In view of the normal objective findings and minimal subjective complaints during the relevant period, the undersigned concludes that the ALJ acted within his zone of choice in making his finding that Schlacht's subjective statements were not consistent with the medical evidence, and thus should be discounted.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 21, 2019                              s/Stephanie Dawkins Davis
                                                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge